Good morning, Your Honours. May it please the Court. Jagdeep Sekhon on behalf of the Petitioner, Gamaljeet Singh. Your Honours, there is no dispute in this case that the Petitioner, Gamaljeet Singh, suffered brutal torture in India and as a result is the victim of past persecution. Similarly, Your Honours, there is no dispute that the Petitioner, Gamaljeet Singh, as a consequence of his persecutory experiences, has suffered past persecution and as a result is prima facie eligible for asylum and withholding of removal. That was in 1988. Is that correct? Is that what you're relying on? Your Honours, the last incident which the immigration agencies stated that Mr. Singh met his burden of proof on was the torture in 1988. But Mr. Singh testified that he was subsequently tortured as well, and he also testified that the Indian security forces continued to express an interest in him after 1988. The immigration judge apparently had some doubt about the credibility of your client's immediate arrest because there was another witness. Yes, Your Honours. But did not accept the earlier and was questioning the credibility of your client. And then, as I understand, the 1988 arrest finally came to trial and your client was exonerated and the judge, the Indian judge, gave quite a tongue lashing to the prosecution, saying there was nothing to this case. Yes, Your Honours. Unfortunately, the country conditions support that sometimes the judicial system in India works, sometimes it doesn't, but that does not insulate someone from persecution because much of the actions by the Indian government are extrajudicial. So the fact that someone may have been exonerated five years later after they broke his collarbone in detention does not mean that he didn't suffer persecution. Moreover, it doesn't prevent the Indian security forces from acting extrajudicially as they routinely do as evidenced by the Department of State reports. Well, I understand your argument, but the issue that seems to be difficult for you is that India is a terribly big country and the immigration judge felt, based upon the change of country conditions, there are places in India where your client can settle where he won't have these difficulties. Why shouldn't we accept that determination by the IJ and the board? Firstly, Your Honor, if my — if you look at the only decision in the record, which is the immigration judge's decision, Your Honor, the court did not mention country conditions at all, not even once. Did not make what? Did not mention country conditions at all, not even once in his decision. His decision was not based on a change in country conditions, and it could not have been based on the evidence in the record. Secondly, Your Honor, the immigration judge made no finding with respect to relocation at all. He did not mention relocation. So both of those representations in Respondent's brief are incorrect, Your Honor. There was no finding with respect to country conditions. He made a determination that your client could go elsewhere in India. There was some evidence to support the IJ because your client spent 15 months with his aunt and nothing occurred. Your Honor, again, the immigration judge did not make a finding with respect to relocation, flatly did not, Your Honor. He did not mention ever that Mr. Singh could safely and reasonably relocate in another part of India, Your Honor. That he did not make such a finding. He may not have made the finding. You mean he made no determination that your client could be safe in other parts of India? Yes. He made no finding that Mr. Singh could — that his fear of persecution was rebutted based on the grounds. We said the 1988 arrest by itself would be sufficient to establish past persecution  in India had not changed significantly enough to rebut the presumption of eligibility. And then he goes on to say that the applicant applied for and received a passport in 1991 in his own name and that the court believes that the 88 arrests coming eight years prior to his departure would by itself appear to be rebutted by the court action, the lapse in the law, Tata, and the continued ability to live in his home village. And except as he describes these later events, which I don't believe anyway. So it seems to me that's pretty close. Well, Your Honor, no, Your Honor. No, Your Honor, I think it's not — this court doesn't review for pretty close, Your Honor. This review, the review, the standard review is whether or not the court applied the proper burdens of proof with respect to whether or not there's been either a fundamental change in circumstances and whether there has been a finding that the government proved that Mr. Singh could safely and reasonably relocate. Now, there is no analysis, one, that he could safely and — safely relocate. There's no analysis that he could reasonably relocate. The word — those words aren't even — I see what you mean. He wasn't really saying that he could relocate. He was saying he — he was — he was saying that he — he didn't have to — even have to move. No, Your Honor. He wasn't saying that either, Your Honor. The immigration judge — what happened in the case is that after — after Mr. Singh established that he had been arrested and tortured in 1984 and 1988, he testified with respect to subsequent episodes of harm. There was only one discrepancy with respect to the — the 1992 and 1995 arrests that are set forth in his application, and Mr. Singh admitted that he just could not remember which took place. And so — but the point of that is if one reads the immigration judge's decision that the immigration judge didn't say that those — that he didn't — that those incidents didn't occur. He just said Mr. Singh didn't meet his burden of proof. Now, Mr. Singh had no burden of proof to establish he was arrested after 1988. The burden of proof at that time shifts to the government to establish that this has been a fundamental change in circumstances. And a singular discrepancy with respect to where one can remember where he was arrested from on a 1992-1995 arrest isn't evidence of a fundamental change in circumstances, Your Honor. And furthermore, if — it's not a specific cogent reason to — even to discount all his testimony with respect to what happened after 1988. If Your Honor would look at Mr. Singh testified that there was continued interest in him, and the government — and the court never found that that was not credible, and, Your Honor, furthermore, with respect to the 1992 arrest, there was corroboration with the very witness — the very witness who Mr. Singh provided to corroborate his 1984 and 1988 arrests was also — also corroborated the 1992 arrest in the same way he did the 1984 arrest. So there was corroboration with respect to the 1992 arrest. And so — yes, Your Honor. I will — I understand what you're saying. I just — but what he said was it would have been — he would be entitled to the presumption if conditions had not changed significantly enough to rebut the presumption. Well, Your Honor, that is also a misstatement of the law. He's entitled to presumption no matter what. At that point, the burden shifts. Does the government provide evidence that there's a fundamental change in circumstances? And the government presented no evidence that there's been a fundamental change in circumstances. And I don't believe, Your Honor, that a singular discrepancy, which is borderline with respect to whether or not it was even material, is going to — is evidence of a fundamental change in circumstances. Okay. We are going to have to read the entire decision and look at the record and determine whether — Yes, ma'am. I'll reserve — Thank you. You may have a minute for rebuttal. We'll hear from the government. Good morning, Your Honors. May it please the Court. Robin Meriwether representing the Respondent, the Attorney General. The rulings below should be affirmed for three reasons. First, conditions in India changed significantly, as shown by record evidence. Second, the petitioner provided inconsistent testimony concerning the circumstances of the alleged arrests in 1992 and 1995. That testimony goes to the heart of his claim and, therefore, supports the adverse credibility ruling. Finally, with respect to the denial by the board of the motion to remand to submit additional evidence, there's no evidence in the record that the prospective witness, Mr. Jagtar Singh, was unavailable for the 1999 hearing. And his work conflict for the 2000 hearing could have been overcome either by requesting a continuance or requesting permission to submit his testimony in writing. Counsel for Petitioner has suggested that the government did not meet its burden of showing changed conditions. But the record contradicts those allegations. The first, the immigration judge did reference the changed conditions on page 125 of the administrative record. He not only in other portions, the immigration judge discussed it, but on page 125 he expressly used the phrase, change in conditions. Let me ask a question. Maybe you can get to it. I know our time is short. The immigration judge accepted two of the arrests because of corroborating witness, apparently rejecting the rest. Those two arrests, I assume, triggered in the mind of the immigration judge that there's a problem. And I had understood from my reading of the record that the immigration judge then indicated and found that there was changed country conditions, which rebutted his fear of future persecution. If you accept the first two, if you accepted his persecution, the burden shifts and the government has to come up with something else. And as I understand, the IJ had said that something else was changed country conditions. Your adversary client says that never happened. That wasn't in the case at all. I got from your brief that it was. Maybe you could explain. Yes, Your Honor. We did the burden shifted to us to rebut by showing changed conditions. The immigration judge, as I read the opinion, found that we had established that, and that's reflected in the decision. And to provide Your Honor with an account of some of those conditions that were introduced, first, as the IJ referenced, the petitioner was acquitted in 1993. And in the transcript of the Indian court's ruling, the police witness states on page 269 of the record that the accused had no other arrests, and this is at a 19 — this is stated in 1993. There had been no other arrests concerning Khalistan, which is the creation of an independent Sikh state, or supporting militancy. The State Department reports were all introduced into the record, and that's reflected in the transcript. Those reports established other changes in the conditions, including the lapse of the anti-terrorism law, under which the prior arrests in 1984 and 1988, excuse me, were made. The State Department reports also indicate that being a member of the organization that petitioner was a member of, the All India Sikh Student Federation, no longer did not in and of itself lead to persecution or arrest. That's on pages 370. Maybe you could be — I know you've got a line of thinking here, but is the change country conditions, which is based upon your argument, is that change country conditions dealing with there's no longer a threat in the hometown of where the petitioner lives, or is it the change country conditions all throughout all of India, or is it that he can go live someplace else in India without a threat? What is it? My understanding is that there's evidence in the record for all three of those propositions. I don't believe the immigration judge addressed the relocation issue, although the country reports by the Department of State would address that, but that the immigration judge didn't even have to get to the relocation issue because it was clear that in the state of Punjab, where the petitioner resided, Sikhs in particular — Is the country report that you're referring to the 1998 State Department report? There are three reports, Your Honor. The most specific information about the conditions facing members of petitioners' organization in the state of Punjab is the 1997 addendum to the 1996 State Department report, and that appears on approximately, I believe it starts on page 369 of the addendum to page 373 or 374. And that addresses the timing of the violence in Punjab concerning Sikhs and the changes such that the president of the All India Sikh Student Federation voluntarily returned to India in 1996. Well, the 1998 act is the one that said that the terrorist act is no longer being And so there is there the report saying there's been a change in country conditions specifically in this area, specifically dealing with the terrorist act. Is that the one that you're referring to? No, Your Honor, although that is also in multiple reports due reference. Which one are you referring to? I'm referring to the 1997 addendum to the 1996 State Department report, which is an addendum that goes specifically to the Punjab region and being a Sikh and addresses the fact that being a Sikh does not lead one to be arrested or persecuted and that the president of the federation of which petitioner was a member returned to India in 1996. That isn't what the ALJ relied on. I don't recall, but under the substantial evidence. Well, you just cited it page 125. That gives the reason why. One, the terrorist act was no longer in effect. That was one reason. Yes. And the second reason that was given there was that, well, let's see. The Respondent's position in India and the dismissal of those two proceedings against Respondent had changed. Yes, that's correct, Your Honor. So that's what he relied on. It is, but under the substantial evidence standard, we look to the record as a whole, and I was just noting for the Court that in addition to this. Well, not if it's not the reason he gives. Well, I actually understand the substantial evidence standard to be if there's evidence in the record as a whole that supports the ruling, and here the ruling is that conditions changed, that the Court can look to that evidence in the record. And so here I would submit that the specific portions of the record that the IJ referred to do provide the evidence to support his ruling. However, there's also additional record evidence, which was the point that I was making, which corroborates the IJ's finding. And the IJ found that there were, you know, minimal chances that the Petitioner would be arrested again, and the burden then shifted to the Petitioner to provide credible testimony that he had a reasonable fear of future persecution. And that's when we get to the adverse credibility ruling, and the IJ did not find that the Petitioner had provided credible testimony concerning that. The inconsistencies in his testimony really went to the heart of his claim and raised a question as to whether these alleged arrests truly did occur. And so the – I understand. Am I correct? The argument made this morning was that there was not a finding of changed conditions so that the IJ's decision was flawed. But if I read the record, the appeal to the board argued that the finding of changed conditions was not supportive. Yes. And then we have another one of these, we adopt the decision of the IJ without addressing that. So basically, is it your view that this all comes down to the – if he had believed that there were arrests even after these changes, he would have found that there were no changed conditions? Is that how you understand this whole thing? I see that my time is running out. Can I answer your question, Your Honor? No, I don't – I believe that the – if the IJ had believed that there had been two other arrests, that would have been material and relevant to whether there had been changed conditions. Yes. But I would submit that the record evidence, the fact that he was acquitted, and the reference in that hearing to there not being any prior arrests, and the State Department reports which we submitted and which the IJ accepted, would have still provided substantial record evidence to find that conditions had changed. But you don't really have to go there if you – if the credibility determination was supported. Yes, that's exactly right, Your Honor. Let me ask a question, please. I'm reading from the IJ's report. The Board just adopted the IJ's report, essentially, from page 125 of the excerpt. With respect to the first two arrests, these are the ones the IJ accepted. He didn't accept the others. With respect to the first two arrests, the Court concludes that the burden of proof is met, and he did suffer those two arrests. But the Court believes that conditions have changed significantly with respect to the Respondent's position in India and dismissal of those two proceedings against the Respondent. Now, that's the only thing I found about change of conditions, and I'm not sure what the IJ meant. What is your position of what we should determine the IJ meant by that statement? I would submit that the IJ meant that conditions in the country had changed such that the Petitioner had no reasonable fear that he would be arrested and persecuted if he returned. What conditions had changed over all of India, in his hometown, against him, that the Terrorist Act had been removed? What? The Terrorist Act had lapsed. He was able to get due process and be acquitted of the crime, and that being Sikh in the state, all of that, plus the other record evidence, indicate that being a Sikh in the state of Punjab no longer made a person subject to arrest and detention, as it may have in 1984 and 1988. Were the State Department reports introduced into evidence? They were, Your Honor. And it's reflected near the beginning of the hearing transcripts. There's a reference to the 1999 transcript. It states that they've been introduced as evidence and accepted into the record. And did you specifically identify which country reports have been introduced into evidence? If you could give me one second. On page 134 of the record, the Court says, I've received the Department of State comments on country conditions June 1996 with the July 1997 addendum, and that's the addendum I was referring to earlier this morning. I have also received the country report for India from the Department of State for 1998 dated February 26, 1999. So how many country reports do you have before him? Three, Your Honor. You mean 96, 97, 98? Yes, although the 98 has, I believe, 99 appears on the bottom of the page, but it covers the period of 1998. Okay. Thank you. Thank you. Thank you, Your Honors. Your Honors, if we look at the immigration judge's decision at 125, the immigration judge in his really explication of his decision, one paragraph, does not mention anything about any Department of State report. There's no mention of the Department of State report in the entire paragraph. His whole decision, that analysis is on 125, which Your Honor read. And in that, I would say that the Court was incorrect, that there are no further arrests under the security legislation. Pages 309 to 310 discuss the security legislation and that arrests continue under the security legislation. And finally, Your Honors, with respect to the issue of the motion to remand, there was a corroborating witness available prior to the hearing. He could not appear at the hearing, and thus he was not available on that day. There was a motion to reopen filed to corroborate those last two arrests, and I witnessed to those arrests. And the BIA denied the motion to reopen without any explanation, other than a conclusion finding that the witness was available on that day, when he clearly states he was not. So even if this Court was to find that there's some evidence here. Yes, Your Honor. I'm not sure I understand the record on this. Was there an offer of proof made of what the witness would have said? Was there a request for continuance? Was there anything like that, a declaration at the time of the hearing? Your Honor, I know that the witness was noticed, and I don't recall from the record what he was precisely going to testify to was noticed because the requirement was that he be noticed. Then he didn't appear on the day. I understand that, but at the hearing when he didn't appear. Well, at that time, Your Honor, there was no motion for a continuance because I think I was not the attorney at that hearing, but the reasoning would be that they don't know why he didn't appear. So at that point, one doesn't want to make a representation with respect to why the witness didn't appear. But immediately after the hearing, there was a motion to reopen filed, which then the BIA creates as a motion to remand. So if this corroborating evidence was so critical, and again, I begin with Mr. Singh was not required to provide any more corroborating evidence at that point. But if that corroborating evidence was so critical, then it would have been the proper thing to do in the exercise of discretion to reopen the proceedings to see if Mr. Singh was arrested in 1992 or 1995. Okay. Thank you. Your point is that there was no reference made by the ALJ to the IJ to any country report. There's no analysis, Your Honor, whatsoever with respect to country conditions at all. The word country conditions is mentioned, but the burden, the circuits. I understand that. So there were essentially two reasons that the IJ gave. One, that he had been acquitted of the 1988 matter. And two, the terrorist TADA thing was no longer in effect. Yes. And the latter is incorrect because arrests continue under the lapsing of the legislation. I thought he was still living there, and that's why he got – he says he got arrested and he got – Yes, he was still. Yeah. And nothing happened to him for eight years. Isn't that what the – No, I don't – the immigration judge did not find, Your Honor, that nothing happened to him after eight years. If you read the immigration judge's decision, he takes that discrepancy that says Mr. Singh has not met his burden of proof. Okay, I – With respect to those arrests. Now we're back to that. And he requested corroboration. He didn't – that's a different thing than saying I don't believe you. He didn't – he said you didn't meet your burden of proof when the burden of proof was not on him. Okay. We've – Sorry, Your Honor. In your indication that arrests continue, you're referring to the statement in the 1998 State Department report. On 309 and 310, Your Honor, yes, the U.S. – And in there, it's very limited. It isn't as broad as your statement. I think your statement's a little misleading. It says a small number of arrests under the TADA continue for crimes allegedly committed before the law elapsed. That's what it said, right? Yes, Your Honor. So the arrests continue. I'm not – But just saying that the arrests continue really is misleading. It wasn't that was what it said. It's a small number for crimes that committed before the lapse of the statute. That was it. Yes. There are re-arrests, yes. Okay. Thank you, counsel. Your time is up. Thank you, Your Honor. Thank you. The case I just argued is submitted for decision. We'll hear the next case, Omora v. Smith.
judges: Wallace, Hug, Schroeder